No.  92-497

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

KATHLEEN A. REYNOLDS,

      Plaintiff and Appellant,

  -vs-

PACIFIC TELECOM, INC.,
a Washington Corporation, and
NORTHWESTERN TELEPHONE, INC.,
an Oregon Corporation,

      Defendants and Respondents.



FILED

JUL 12 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

---

APPEAL FROM:  District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael H. Keedy, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

         Elizabeth A. Best; Best Law Offices, Great Falls,
Montana

     For Respondents:

         C. Eugene Phillips; Murphy, Robinson, Heckathorn,
& Phillips, Kalispell, Montana
Howard Rubin & Amy Alpern; Amburgey, Segel & Rubin,
Portland, Oregon

         Claren Neal, Montana Department of Labor and
Industry, Helena, Montana

---

               Submitted on Briefs:  February 4, 1993

                       Decided:  July 12, 1993

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Kathleen Reynolds appeals from an order of the Eleventh Judicial District Court, Flathead County, upholding the Board of Labor Appeals' denial of unemployment insurance benefits. We affirm.

We restate the issues on appeal as follows:

1. Did the District Court err in concluding that the Board of Labor Appeals was properly constituted?

2. Did the District Court err in determining that the Board of Labor Appeals' findings of fact were supported by substantial evidence?

3. Did the District Court err in determining that the Board of Labor Appeals properly disqualified Reynolds from receiving unemployment insurance benefits under § 39-51-2302, MCA?

Kathleen Reynolds (Reynolds) was employed by Northwestern Telephone Systems, Inc. (Northwestern Telephone), a division of Pacific Telecom, Inc., in Kalispell. Reynolds worked as a traffic supervisor in operator services.

In early 1990, Reynolds complained to Helen Shirtliff (Shirtliff), manager of operator services, and Ken Sprain (Sprain), division vice president, that supervisors were monitoring conversations between employees. She characterized the monitoring as a "public policy" violation. Reynolds asserts that Shirtliff reduced her job responsibilities in response to this complaint. Reynolds also complained to Shirtliff that supervisors had made false statements regarding an employee's workers' compensation

2

claim, and that she had been denied the opportunity to make a statement. According to Reynolds, Shirtliff responded to this complaint by threatening to change the way in which work and vacation schedules were selected.

On June 19, 1990, Reynolds began a six-month medical leave of absence. Reynolds had developed depression, dysthymia and anxiety, which she attributed to Shirtliff's retaliation. Her medical conditions were diagnosed as work-related. While on medical leave, Reynolds made a statement in support of the employee seeking workers' compensation benefits. When her medical leave expired in December of 1990, Reynolds went on unpaid leave.

Early in 1991, Toni Welliver (Welliver) replaced Shirtliff as manager of operator services. Sprain also left his position as division vice president and was replaced by Ken Laing (Laing). When Reynolds learned of these changes in personnel, she obtained a medical release and returned to her position as a supervisor in operator services on February 11, 1991.

Reynolds' conflicts with management personnel continued. Northwestern Telephone had begun assigning vacation and work schedules to supervisors in operator services on a rotating basis; the schedules previously had been assigned by seniority. Reynolds, who had the most seniority in her work pool, characterized the change as retaliation for the statement she made during her leave of absence regarding the workers' compensation claim. Welliver also declined to implement Reynolds' suggestion that the fire department's telephone number be placed on a "quick list" of frequently called telephone numbers.

3

Reynolds complained to Laing about the continued monitoring of employee conversations and the handling of the workers' compensation claim. On February 20, Reynolds asked Laing for help in obtaining compensation for the time that she was on unpaid leave. Laing responded that he would not recommend pursuing the compensation. Reynolds also inquired about a merit salary increase that she did not receive while on medical leave. Laing indicated that he did not know if she was entitled to the salary increase. Reynolds then asked Laing to terminate her employment with Northwestern Telephone. Reynolds subsequently took part in a conference call with Wes Carson, manager of employee relations, who suggested that she apply for long-term disability benefits. Reynolds declined to do so. On March 1, Reynolds submitted a letter of termination.

Reynolds filed a Claimant's Discharge Statement with the Montana Department of Labor and Industry Unemployment Insurance Division on April 4, 1991. Reynolds asserted that Northwestern Telephone had "made work conditions intolerable causing severe anxiety and depression and ulcers." Additionally, Reynolds asserted that she was fired for refusing to violate public policy and for reporting public policy violations.

On May 3, a claims specialist denied Reynolds' application for unemployment insurance benefits. Reynolds appealed the decision to a Department of Labor and Industry appeals referee. The referee determined that Reynolds had terminated her employment for good cause and, therefore, was eligible to receive unemployment insurance benefits.

4

Northwestern Telephone appealed the referee's decision to the three-member Board of Labor Appeals (the Board). On July 26, 1991, the Board reversed the referee's decision. Daniel Johns (Johns), the attorney member of the Board, abstained.

Reynolds requested that the Board reconsider its decision because she had not received notice of, and did not have the opportunity to participate in, the July decision. The Board granted Reynolds' request and held a hearing on October 8. The Board again reversed the referee's decision, determining that Reynolds was disqualified from receiving unemployment insurance benefits. Johns again abstained.

Reynolds petitioned the District Court to review the Board's decision. The District Court upheld the decision, determining, in pertinent part, that the Board was properly constituted, that the Board's findings were supported by substantial evidence, and that the Board's disqualification of Reynolds from receiving benefits was not erroneous under § 39-51-2302, MCA. This appeal follows.

Did the District Court err in concluding that the Board of Labor Appeals was properly constituted?

Johns, the attorney member of the Board, abstained from participating in the October 8 hearing due to a conflict of interest. Johns indicated that a pro tempore member would be appointed in the event that Joseph Thares and Stephen Birch, the remaining Board members, did not reach a consensus on Reynolds' eligibility for unemployment insurance benefits. Thares and Birch both signed the Board's decision denying unemployment insurance

5

benefits.

The District Court concluded that the Board was properly constituted when it denied Reynolds benefits. On appeal, Reynolds reasserts her argument that the Board was not properly constituted. We review a district court's conclusion of law to determine whether the court's interpretation of the law is correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603.

We agree with Reynolds that § 2-15-1704(3), MCA, establishes a three-member Board and § 2-15-124(1), MCA, requires that one member of the Board be a licensed attorney. We disagree, however, with her contention that these statutes require all three members, including the attorney member, to participate in the decision.

In construing statutes, courts are to ascertain what is in terms or in substance contained within the statute; they may not insert what has been omitted or omit what has been inserted. Section 1-2-101, MCA. No language in §§ 2-15-1704(3) or 2-15-124(1), MCA, requires the participation of all three members, or the attorney member, in every case before the Board.

Furthermore, statutes must be construed to give effect to all provisions wherever possible. Section 1-2-101, MCA. Under § 2-15-124(8), MCA, a majority of the membership of the Board of Labor Appeals constitutes a quorum for the purpose of conducting business and at least a majority vote of all members of the Board is required to adopt a decision. A majority of the three-member Board is two members. Nothing in § 2-15-124(8), MCA, requires that the attorney member be one of the members making up the quorum; nor

6

does the statute require the attorney member's vote to adopt a decision of the Board. We decline to construe §§ 2-15-1704(3), and 2-15-124(1), MCA, as Reynolds suggests. Requiring all three members, including the attorney member, to participate in a decision would vitiate § 2-15-124(8), MCA, which requires only a majority of the Board's members to constitute a quorum to do business and a majority vote of all members to adopt a decision.

The composition of the Board of Labor Appeals complied with §§ 2-15-1704(3), 2-15-124(1), and 2-15-124(8), MCA, when the Board determined that Reynolds was disqualified from receiving unemployment insurance benefits. We hold that the District Court did not err in concluding that the Board of Labor Appeals was properly constituted.

Did the District Court err in determining that the Board of Labor Appeals' findings of fact were supported by substantial evidence?

A district court's review of a decision of the Board of Labor Appeals is limited by § 39-51-2410(5), MCA, which provides:

> In any judicial proceeding under 39-51-2406 through 39-51-2410, the findings of the board as to the facts, if supported by evidence, and in the absence of fraud, shall be conclusive and the jurisdiction of said court shall be confined to questions of law.

A finding is supported by evidence if it is supported by substantial evidence. Substantial evidence is more than a scintilla of evidence, but it may be less than a preponderance of the evidence. Ward v. Johnson (1990), 242 Mont. 225, 228, 790 P.2d 483, 485.

7

Pursuant to § 39-51-2410(5), MCA, a district court is not permitted to balance conflicting evidence in support of and in opposition to the Board's findings, determine which is the more substantial evidence, or consider where the preponderance of the evidence lies. To do so would substitute the district court's view of the evidence for that of the Board, effectively nullifying the conclusive nature of the Board's findings provided by § 39-51-2410(5), MCA. Ward, 790 P.2d at 485.

This Court's review of the Board's findings is governed by the same standard. Zimmer-Jackson v. Department of Labor and Indus. (1988), 231 Mont. 357, 360, 752 P.2d 1095, 1098. Accordingly, we review the record to determine whether substantial evidence supports the Board's findings.

The Board made the following finding regarding Reynolds' complaint that other supervisors violated "public policy" by monitoring conversations between employees:

> The Board of Labor Appeals feels that the charge of illegal monitoring of conversations is questionable. Listening to others [sic] conversations may be immature and even unethical, but it is not a violation of the wiretap laws or F.C.C. regulations. If the claimant felt strongly about the practice other remedies to the situation were available. None of the employees whose conversations were listened to complained about the practice and no known grievance was filed.

Reynolds first contends that the absence of employee complaints or grievances is unsupported in the record. Because she concedes that their existence is not particularly relevant in determining whether she had good cause to leave her employment, we need not review the record for substantial evidence to support the finding that no employee complained or filed a grievance about the monitoring.

8

Reynolds also contends that this finding, as a whole, does not address the gravamen of her claim, which is that she left her employment for good cause because she was subjected to retaliation. According to Reynolds, Northwestern Telephone retaliated in response to this complaint by reducing job responsibilities, changing the assignment of work and vacation schedules, and denying a merit salary increase. The only retaliation which is even arguably supported by the record is Shirtliff's reduction of Reynolds' job responsibilities prior to her June, 1990, medical leave. This alleged retaliation predates Reynolds' return to work in February of 1991 under a new manager and her subsequent resignation. Thus, it does not form a basis for her claim that she had good cause to leave her employment on March 1, 1991.

The Board made the following finding concerning Reynolds' complaint that Northwestern Telephone had mishandled a workers' compensation claim:

> The claimant was also upset that in her view the company failed to respond properly to a workers [sic] compensation claim. Testimony from the claimant reveals that when she was asked who was responsible for filing the companies [sic] answer to the claim she responded that her responsibility was to report the incident to her manager and that she didn't know where the claim went from there. Her testimony also indicates that some months prior to her termination she provided a statement of the incident to both the union representative and to company management. The burden of filing and following up on the industrial accident claim falls on he [sic] injured workman and his union.

Reynolds contends that this finding ignores Northwestern Telephone's retaliatory response to her workers' compensation statement. According to Reynolds, Northwestern Telephone terminated her leave on December 5 after it learned of her

9

statement instead of allowing the six-month leave to expire on December 19. Other evidence of record, however, refutes this testimony. A letter written by Robert Kemp, employment manager of Pacific Telecom, Inc., Northwestern Telephone's parent company, indicates that Reynolds was notified in December that she would be placed on unpaid leave effective December 20. The Kemp letter was admitted as an exhibit before the Board, without objection, and constitutes substantial evidence for the Board to disregard Reynolds' allegation that Northwestern Telephone responded to her workers' compensation statement by terminating her medical leave.

The Board made the following finding regarding Reynolds' suggestion that the fire department's telephone number be added to the "quick list":

> The claimant also stated she incurred additional stress when her suggestion that the fire departments [sic] telephone number be returned to the "quick lists" was not acted upon. For reasons of their own management elected not to implement her suggestion. They are not bound to put into practice every employee suggestion however worthy that suggestion might be. Final decisions are a management prerogative.
>
> . . .
>
> About two weeks after returning to work the claimant felt the prior stress situations had not gone away and tendered her resignation.

Reynolds contends that no evidence of record supports the finding that she terminated her employment because she was unhappy that her suggestion was not implemented. However, Reynolds testified that she was upset when Welliver declined to implement her suggestion and that she terminated her employment on March 1 when Laing did not respond to this and other concerns. We

10

determine that substantial evidence supports the finding that she terminated her employment in part because she was unhappy that her suggestion was not implemented.

Reynolds also contends that this finding failed to address Northwestern Telephone's retaliatory response to her suggestion. According to Reynolds, Northwestern Telephone responded by withdrawing job responsibilities and benefits. Nothing in the record supports Reynolds' assertion that the Company retaliated in response to this suggestion. Therefore, it was unnecessary for the Board to address the alleged retaliation relating to this suggestion.

The Board made the following finding regarding the change in vacation and shift scheduling:

> Claimant was also opposed to the new procedure in scheduling work shifts and vacation scheduling. Management must have the flexibility to decide these matters. None of the other employees affected by the changes complained about the practice or the method of notification.

Reynolds again contends that the Board failed to consider the change in scheduling as a retaliatory response to her complaint that other supervisors had made false statements regarding a workers' compensation claim and to her own statement regarding the claim. However, other evidence of record indicates that the scheduling changes were not related to Reynolds in any way. The Kemp letter indicates that the change in scheduling resulted from a business decision. According to the letter, the assignment of vacation and work schedules on a rotating basis met the needs of Northwestern Telephone and complied with its policies. The letter

11

also indicates that Northwestern Telephone contemplated changing the scheduling of vacation and work shifts as early as 1989, prior to Reynolds' workers' compensation statement. Because this evidence refutes Reynolds' assertion that Northwestern Telephone changed the scheduling in retaliation for her actions, the Board could disregard the assertion.

The Board made the following finding regarding Northwestern Telephone's reaction to Reynolds' request to terminate her employment:

> When management learned of her planned resignation they initiated a series of conference calls in an attempt to have her accept long term disability instead. She declined the offers and resigned her employment.

Reynolds contends that the record does not support the finding that management initiated the conference calls concerning the long-term disability. We disagree. Reynolds testified that she was placed on three conference calls with Wes Carson after she requested Laing to terminate her employment and that Carson suggested that she go on long-term disability.

Reynolds also contends that this finding ignores her rationale for declining to accept long-term disability. According to Reynolds, unrefuted testimony established that long-term disability would result in a substantial loss of pay, terminate in two years, and not guarantee employment at its expiration. Reynolds also asserts that long-term disability would have been used as a device to terminate her employment. Reynolds' reasons for declining to go on long-term disability, however, do not form a basis for her claim that she left her employment with good cause. Accordingly, the

12

Board did not have to consider those reasons in the above finding.

Finally, the Board made the following finding concerning the conditions of Reynolds' employment after she returned to work:

> The Board feels that the claimant was not treated differently than others in the work group and that the pay and conditions were substantially the same as before her medical leave and continuing employment was available.

Reynolds contends that other evidence of record contradicts this finding. While this may be true, we have discussed above our scope in reviewing findings of the Board, which is to review the record only to determine whether the finding is supported by substantial evidence. See § 39-51-2410(5), MCA; Ward v. Johnson (1990), 242 Mont. 225, 228, 790 P.2d 483, 485. The Kemp letter, which reflects that Reynolds was not treated differently than other supervisors in operator services, constitutes substantial evidence that supports this finding.

We hold that the District Court did not err in determining that the Board's findings were supported by substantial evidence.

Did the District Court err in determining that the Board of Labor Appeals properly disqualified Reynolds from receiving unemployment insurance benefits under § 39-51-2302, MCA?

The Board of Labor Appeals determined that Reynolds was disqualified from receiving unemployment insurance benefits. The District Court determined that the Board's denial of unemployment insurance benefits was not erroneous under § 39-51-2302, MCA. Section 39-51-2302, MCA, provides in pertinent part:

**Disqualification for leaving work without good cause.**

13

(1) An individual shall be disqualified for benefits if he has left work without good cause attributable to his employment.

(2) He may not be disqualified if the department finds that he left his employment because of personal illness or injury not associated with misconduct upon the advice of a licensed and practicing physician and, after recovering from his illness or injury when recovery is certified by a licensed and practicing physician, he returned to his employer and offered his service and his regular or comparable suitable work was not available, if so found by the department, provided he is otherwise eligible.

Reynolds advances three separate arguments as to why she was not disqualified from receiving benefits under § 39-51-2302, MCA. Reynolds first contends that she is not disqualified because she left work with good cause as defined in § 24.11.457, ARM. Section 24.11.457, ARM, provides in pertinent part:

(1) A claimant has left work with good cause attributable to employment if:

(a) compelling reasons arising from the work environment caused the claimant to leave;

(b) the claimant attempted to correct the problem in the work environment; and

(c) the claimant informed the employer of the problem and gave the employer a reasonable opportunity to correct it;

(d) the claimant left work which the department determines to be unsuitable under 39-51-2304, MCA.

(2) The term "compelling reasons" as used in this rule includes but is not limited to:

(a) undue risk of injury, illness, physical impairment, or reasonably foreseeable risks to the claimant's morals;

(b) unreasonable actions by the employer concerning hours, wages, terms of employment or working conditions, including, but not limited to, unilaterally imposed reductions of

14

20% or more in the claimant's customary wages or hours. . . .

Reynolds asserts that Northwestern Telephone responded to her complaints by reducing job responsibilities, changing the method of selecting work and vacation schedules, shortening her medical leave of absence, and denying a merit salary increase. According to Reynolds, these alleged acts of retaliation created an undue risk of illness and constituted unreasonable actions on the part of Northwestern Telephone concerning hours, wages, terms of employment or working conditions. On that basis, Reynolds contends that she had compelling reasons and, therefore, good cause to leave her employment under § 24.11.457, ARM.

The existence of a compelling reason, in itself, is not sufficient to constitute good cause under § 24.11.457, ARM. That rule also requires the employee to give the employer a reasonable opportunity to correct the problem before the employee can be considered to have left employment with good cause.

Here, even assuming that "compelling reasons" existed, Reynolds failed to give Northwestern Telephone a reasonable opportunity to address her complaints. Reynolds returned from her leave of absence on February 11. According to her testimony, she requested Laing, the new district vice president, to terminate her employment on February 20 when he indicated that he would not recommend that she receive compensation for her unpaid leave and did not know whether she should receive a merit salary increase. Reynolds further testified that she terminated her employment on March 1, when Laing "did not have any answers" to her concerns

15

regarding the workers' compensation claim, the monitoring of employees' conversations, and the "quick list." Reynolds terminated her employment less than three weeks after returning to work.

The Kemp letter substantiates Reynolds' failure to give management a reasonable opportunity to address her concerns. The letter indicates that Northwestern Telephone had thoroughly investigated Reynolds' complaints and remained willing to continue its dialogue with her. Furthermore, the letter indicates that Laing was in the process of responding to her request for a merit salary increase when she submitted her letter of termination. We conclude that Reynolds did not have good cause to leave her employment under § 24.11.457, ARM, because she failed to give the new management a reasonable opportunity to address her concerns. On that basis, Reynolds properly was disqualified from receiving benefits under § 39-51-2302(1), MCA, which permits disqualification when an employee leaves work without good cause attributable to the employment.

Reynolds also contends that she left her employment on June 19, 1990, on the advice of a physician and that her regular or comparable work was not available when she returned from the leave of absence on February 11, 1991. According to Reynolds, the same or comparable work was not available because she had not been restored job responsibilities, had not been given a merit salary increase and could no longer select work and vacation schedules on the basis of seniority. On that basis, Reynolds contends that she should not have been disqualified from receiving unemployment

16

insurance benefits under § 39-51-2302(2), MCA.

Section § 39-51-2302(2), MCA, provides that a claimant may not be disqualified from receiving unemployment insurance benefits if the claimant has left employment on the advice of a physician and the same or comparable suitable work is unavailable when the claimant recovers. We note first, in this regard, that in neither her Claimant's Discharge Statement nor her Claimant's Response to Employer Statement did Reynolds claim that she left Northwestern Telephone because work comparable to that she performed prior to her leave was not available. Furthermore, as discussed above, Reynolds returned to work as a traffic supervisor in operator services, the position she held prior to her leave. The work duties were essentially the same as when she left. The changes asserted by Reynolds do not render her post-leave employment substantially different from her employment prior to her leave.

Finally, Reynolds contends that she should not have been disqualified from receiving the benefits under § 39-51-2302(2), MCA, because she continued to suffer from her medical condition when she submitted her letter of termination on March 1. While she may or may not have been suffering from the same medical condition, we disagree that § 39-51-2302(2), MCA, precludes disqualification on these facts.

Nothing on the record before us indicates that Reynolds left her employment on March 1 on "the advice of a licensed and practicing physician;" nor did she subsequently return and offer her services. Because Reynolds failed to meet these two statutory conditions, we conclude that § 39-51-2302(2), MCA, does not bar her

17

disqualification from receiving unemployment insurance benefits.

We hold that the District Court properly determined that the Board of Labor Appeals' disqualification of Reynolds from receiving unemployment insurance benefits was not erroneous under § 39-51-2302, MCA.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

18

Justice Terry N. Trieweiler dissenting.

I dissent from the majority opinion.

Section 2-15-1704, MCA, establishes a Board of Labor Appeals. Subsection (4) of that statute designates the board as a "quasi-judicial board for purposes of 2-15-124."

Section 2-15-124, MCA, provides that:

If an agency is designated by law as a quasi-judicial board for the purposes of this section, the following requirements apply:

(1)  The number of and qualifications of its members are as prescribed by law.  In addition to those qualifications, unless otherwise provided by law, at least one member shall be an attorney licensed to practice law in this state.

. . . .

(8)  A majority of the membership constitutes a quorum to do business.  A favorable vote of at least a majority of all members of a board is required to adopt any resolution, motion, or other decision, unless otherwise provided by law.

It is obvious that when the Legislature established a requirement that quasi-judicial boards include an attorney, it was concerned that boards which decide legal as well as factual issues have the benefit of at least one member who is trained in the law.

In this case, it is stipulated by the parties that Dan Johns, who was the board's chairman and its only attorney, was neither present for Kathleen Reynolds' hearing, nor participated in the board's determination of her rights.  Therefore, the board which denied Reynolds' claim was not properly constituted, as is required under § 2-15-124(1), MCA.

19

The majority has set forth the proper rule for construing this statute, but then completely ignores the rule in arriving at its conclusion. Section 1-2-101, MCA, provides that "[i]n the construction of a statute . . . [w]here there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all."

The only way to construe § 2-15-124, MCA, in a way that gives effect to both subsections (1) and (8), is to hold that while a majority of a quasi-judicial board can constitute a quorum, and while a vote of at least a majority of the members is sufficient to render a decision, the decision is not binding unless an attorney licensed to practice law participated in the decision. If one of the two members constituting a quorum is an attorney, the third member need not be present. So long as an attorney is present for the hearing and deliberations, he or she need not vote for the final decision, so long as there are two other votes in support of that decision.

This construction of § 2-15-124, MCA, is the only way to give effect to both subsections (1) and (8).

In addition to ignoring the rule of statutory construction which it held is controlling, the majority opinion also ignores the following rule of statutory construction:

> In the construction of a statute, the intention of the legislature is to be pursued if possible. When a general and particular provision are inconsistent, the latter is paramount to the former, so a particular intent will control a general one that is inconsistent with it.

Section 1-2-102, MCA.

20

The requirement that two members of a three person board are necessary to constitute a quorum and that two out of three votes are necessary to render a decision is a general requirement. The requirement that one of the members of the three member board be an attorney is a specific requirement. In this case, the majority ignored legislative intent and elevated the general provisions pertaining to a quorum and a majority over the specific requirement that an attorney be a member of the Board of Labor Appeals.

The majority opinion completely defeats the Legislature's intention that when boards such as this one decide the legal rights of Montana's citizens, they include a member who has some working familiarity with Montana's laws. Kathleen Reynolds did not have the benefit of that reasonable requirement. Therefore, I dissent from the majority opinion. I would reverse the judgment of the District Court.

_____
Justice

Justice William E. Hunt, Sr., joins in the foregoing dissent.

_____
Justice

July 12, 1993

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Elizabeth A. Best
Best Law Offices
P.O. Box 2114
Great Falls, MT 59403-2114

C. Eugene Phillips
Murphy, Robinson, Heckathorn & Phillips
P.O. Box 759
Kalispell, MT 59903-0759

Howard Rubin & Amy Alpern
Amburgey, Segel & Rubin, P.C.
1750 S.W. Harbor Way, Ste. 450
Portland, OR 97201

Claren Neal, Legal Counsel
Montana Department of Labor & Industry
P.O. Box 1728
Helena, MT 59624-1728

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy