No.  95-226

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

THOMAS BROTHERS,

       Plaintiff and Appellant,

   v.

CARGILL, INC.,

       Employer,

   and

STATE OF MONTANA, DEPARTMENT OF
LABOR AND INDUSTRY,

       Defendant and Respondent.

FILED

APR 16 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Twelfth Judicial District,
               In and for the County of Liberty,
               The Honorable John Warner, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

              John E. Seidlitz, Jr., Attorney at Law,
              Great Falls, Montana

       For Respondent:

              Claren J. Neal, Legal Counsel, Montana Department
              of Labor and Industry, Helena, Montana

Submitted on Briefs:  October 19, 1995

Decided:  April 16, 1996

Filed:

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Thomas Brothers (Brothers) petitioned the District Court for the Twelfth Judicial District, Liberty County, to review the decision of the Board of Labor Appeals denying Brothers' claim for unemployment insurance benefits. The District Court affirmed the Board's decision and Brothers appeals. We reverse and remand.

The sole issue presented for review is:

Did the District Court err in affirming the Board's decision denying Brothers' claim for unemployment insurance benefits?

Background Facts

Cargill, Inc. (Cargill) manufactures livestock feeds. Brothers worked for Cargill as a Millman III for ten years. The Millman III position involves substantial physical activity including lifting bags of feed weighing 50 pounds or more. Brothers began experiencing back problems in 1989. He had back surgery in February or March of 1991. Following this surgery, he did light duty work during the month of April.

In January 1992, Brothers could not get the company forklift started due to the cold weather. Brothers climbed a shelf to grab a 50-pound bag of grain. As Brothers grabbed the bag, it knocked him to the ground causing injury to his back. Brothers reported the injury to a co-worker, however, he failed to file a workers' compensation report. Brothers did seek medical attention and treatment for his back injury.

Because Cargill considered Brothers to be a valued employee, Brothers was allowed to perform light duty work in a modified job

2

position for the next several months. On April 30, 1993, Brothers left work to have back surgery.

On November 3, 1993, Brothers' doctor released Brothers to return to his former position with the prior restrictions for light duty work for another six months while his back healed. When Brothers contacted Cargill, he was informed that no light duty or sedentary work was available. The Millman III position was available but Brothers could not perform all of the required duties of this position because of his back condition.

Brothers applied for unemployment benefits on November 7, 1993. A deputy examiner of the Department of Labor and Industry denied benefits on the grounds that Brothers left work for medical reasons and could not return to his previous job without restrictions. Brothers appealed and after a telephone hearing wherein both parties testified, an appeals referee found that because Brothers was not released to his regular work his claim should be denied. Brothers appealed to the Board of Labor Appeals. However, after hearing testimony and considering the case, the Board adopted the findings of the appeals referee.

Brothers then filed a Petition for Judicial Review with the District Court. On April 17, 1995, the District Court issued an Order affirming the decision of the Board. Brothers now appeals the District Court's Order.

### Discussion

Did the District Court err in affirming the Board's decision denying Brothers' claim for unemployment insurance benefits?

3

A district court's review of a decision of the Board is not governed by the Montana Administrative Procedure Act. Schneeman v. State Dept. of Labor & Ind. (1993), 257 Mont. 254, 257, 848 P.2d 504, 506 (citing City of Billings v. State Bd. of Labor Appeals (1983), 204 Mont. 38, 663 P.2d 1167). Instead, a district court's review is limited by § 39-51-2410(5), MCA, which provides:

> In any judicial proceeding under 39-51-2406 through 39-51-2410, the findings of the board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive and the jurisdiction of said court shall be confined to questions of law.

Under § 39-51-2410(5), MCA, a district court may not balance conflicting evidence in support of and in opposition to the Board's findings, determine which is the more substantial evidence, or consider where the preponderance of the evidence lies; to do so would substitute the district court's view of the evidence for that of the Board, nullifying the conclusive nature of the Board's findings. Stine v. Western Federal Sav. Bank (1994), 266 Mont. 83, 86, 879 P.2d 53, 55 (citing Reynolds v. Pacific Telecom, Inc. (1993), 259 Mont. 309, 314, 856 P.2d 1365, 1368).

This Court's review of a district court's determination in unemployment compensation cases is governed by the same standard. Section 39-51-2410(6), MCA, provides:

> An appeal may be taken from the decision of the district court to the supreme court of Montana in the same manner, but not inconsistent with the provisions of this chapter, as is provided in civil cases.

Here, the issue involves an interpretation of the law, rather than a dispute over the facts. In the case before us, the appeals referee and the Board denied Brothers' claim for unemployment

4

benefits on the grounds that Brothers was not released to his regular or comparable work and, consequently, he had not complied with the provisions of § 39-51-2302(2), MCA. Under this statute, an employee is not disqualified from unemployment benefits if he meets four conditions: he left his employment because of personal illness or injury upon the advice of a licensed and practicing physician; he recovers from the illness or injury and his recovery is certified by a licensed and practicing physician; he returns to his employer and offers his services; and his regular or comparable suitable work is not available.

After review, the District Court affirmed the denial of Brothers' claim and determined that

> Cargill's initial decision to temporarily modify claimant's job for a limited time did not, as a matter of law, have the effect of converting the regular millman job into a light duty millman job. As a consequence, when claimant was released from his back surgery with a light duty restriction, he was not released to his regular work.

Brothers contends that because his job was modified by his employer to light duty work and because he performed the light duty work for the nine months prior to his surgery, the light duty work became his "regular work." Additionally, he argues that his physician did release him to perform his "regular work," the same light duty work he was doing prior to his surgery.

Thus the determinative question here is what is meant by the phrases "regular work" and "comparable suitable work." These phrases, however, are not statutorily defined. The interpretation and application of a statute to a particular set of circumstances

5

are matters of law. Denial of App. for Iss. of Beer/Wine Lic. (1994), 267 Mont. 298, 301, 883 P.2d 833, 835. An administrative agency's conclusions of law are reviewed by district courts and this Court to determine whether those conclusions are correct. Denial of App., 883 P.2d at 835 (citing GBN, Inc. v. Montana Dept. of Revenue (1991), 249 Mont. 261, 264, 815 P.2d 595, 597; Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603).

We stated in Gulbrandson v. Carey (1995), 272 Mont. 494, 500, 901 P.2d 573, 577, that:

> Our function in construing and applying statutes is to effectuate the legislature's intent. United States v. Brooks (1995), 890 P.2d 759, 761, 52 St. Rep. 113, 114. To determine legislative intent, we first look to the plain meaning of the words used in the statute. Stansbury v. Lin (1993), 257 Mont. 245, 249, 848 P.2d 509, 511. If the legislature's intent can be determined by the plain language of the words used, we may not go further and apply other means of interpretation. Prairie County Co-op State Grazing District v. Kalfell Ranch, Inc. (1994), 269 Mont. 117, 124-125, 887 P.2d 241, 246. It is only when the intent cannot be determined from the language of the statute that we will examine legislative history. Matter of Kalfell Ranch, Inc., 887 P.2d at 246.

In the case before us and absent statutory definitions for the phrases "regular work" or "comparable suitable work," we conclude that the plain meaning of the words used by the legislature controls. "Regular" means normal, typical or natural. Webster's Ninth New Collegiate Dictionary 992 (1986). "Suitable" means matching, fit or able. Webster's Ninth New Collegiate Dictionary 1180 (1986). "Comparable" means equivalent or similar. Webster's Ninth New Collegiate Dictionary 267 (1986). Thus an employee's regular work is that which he does normally, typically or

naturally. Comparable suitable work is equivalent or similar work with matching duties.

For the nine months prior to his surgery, Brothers was not performing the work of a Millman III. He was working in a position created for him by his employer. Regardless of what the job description says, the employer chooses what the employee actually does. Work is specific to the employee, not to the job description. If the employer chooses duties different than those set forth in the job description, whether for the convenience of the employer or the employee, and the employee performs those duties, that work with those duties is what the employee does "normally, typically and naturally." That modified position, thus, constitutes the employee's regular work, absent some agreement, direction or evidence that the modified duties are merely temporary under the facts and circumstances of the case at issue. Obviously, the longer the employee performs his duties as modified by his employer, the more likely it will follow that the modified position has become the employee's regular work. The same conclusion will obtain if the time during which the employee is to perform his modified duties is left open-ended by the employer.

Here the factual record does not support a legal conclusion that Cargill's modifications of Brothers' job duties were temporary. In point of fact, Brothers performed his duties as modified by Cargill for nine months, and it appears that Brothers could have continued performing those same modified duties indefinitely. Thus, it follows, that Brothers' modified duties

7

were *his* regular work. To conclude otherwise would allow an employer to defeat an employee's claim for unemployment benefits by the simple expedient of directing the employee to perform duties different from those in his job description and then claiming that the employee was not engaged in his "regular work." There is nothing in § 39-51-2302, MCA, that leads inescapably to the conclusion that the legislature intended "regular work" and "comparable suitable work" to be synonymous with "job description."

Accordingly, we hold that the Board and the District Court erred in concluding that the work Brothers performed prior to his back surgery was not his regular work. Thus, Brothers' claim for unemployment benefits should not have been denied since he meets the requirements of § 39-51-2302(2), MCA. Brothers left his employment because of his back injury and upon the advice of his doctor; he recovered from the back injury and his recovery was certified by his doctor; he returned to Cargill and offered his services; and his regular work or comparable suitable work was not available.

Therefore, we reverse the decision of the District Court and we remand for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

8

_William E. Huntley_

_Tom Trieweiler_

_W. William Leaphart_

Justices

Justice Charles E. Erdmann dissenting.

I respectfully dissent. Under the facts of this case, I cannot agree that the temporary light-duty position created by Cargill was somehow converted into Brothers' regular employment. The ironic result of this decision is that a company that created a temporary job to accommodate a valued employee is now responsible for unemployment benefits which it would not have been responsible for if the company had not created the temporary job.

Brothers' position as a Millman III involved heavy physical activity and on a usual day he would stack fifteen tons of feed. Beginning in 1989, Brothers started to experience back problems and in 1991 he had back surgery. Following his return to work, he was given a temporary light-duty position for about a month, after which he returned to his regular job. In January 1992 Brothers injured his back again, and at the end of August 1992 his doctor restricted him to light duty. Since Brothers was a valued employee, Cargill again created a temporary job for him which deleted the heavy lifting normally required of a Millman III position. Brothers' co-workers assumed the lifting duties that Brothers had previously performed. By having co-workers assume Brothers' lifting duties, job production suffered and Cargill was concerned with safety issues involving the co-workers. During the period of time that Brothers was on light duty, Cargill offered him a permanent office position which only entailed light duty, but Brothers preferred to remain in the mill and refused the position.

10

Brothers worked under the light-duty restrictions until April 30, 1993, when he left to have a second surgery on his back. On November 4, 1993, Brothers' doctor released him for work, but with light-duty restrictions. Brothers contacted Cargill and was informed that his Millman III position was available, but that there was no position available if he was restricted to light work.

The Department of Labor referee found that Brothers had not been released to his regular or comparable work, and therefore, was not eligible for benefits under § 39-51-2302(2), MCA. This determination was appealed to the Board of Labor Appeals, and following a hearing on March 4, 1994, the Board upheld and adopted the referee's decision. Brothers appealed to the District Court and the administrative determinations were upheld.

Section 39-51-2302(2), MCA, provides that an employee may not be disqualified from benefits if: the employee leaves work because of a personal injury upon his doctor's advice and not because of misconduct; the employee recovers from the illness or injury and his recovery is certified by his doctor; the employee returns to his employer and offers to go back to work; and the employee's regular or comparable suitable work is not available. Here, Brothers complied with the first and third conditions but has failed to meet the second and fourth conditions.

There is no dispute that Brothers' doctor did not release him to his Millman III position in November 1993. Further, there is no dispute that Brothers' Millman III position was available at that time and that he could not perform the physical duties of the

11

position. The majority, however, avoids this analysis by determining that the temporary light-duty job that Cargill created for Brothers between September 1992 and April 1993 had become his "regular or comparable suitable work." The majority holds that Brothers had been released to his permanent light-duty position and that the position was no longer available.

The majority does not try to argue that the light-duty position was comparable to Brothers' regular position, as it clearly was not. On a normal day in his regular job, Brothers would stack fifteen tons of feed. In his light-duty job he did no lifting at all and, according to his supervisor, was able to do just a fraction of his normal duties. Instead, the majority determined that since Cargill allowed Brothers to work at the light-duty job for nine (actually eight) months, that position was converted into his regular work, absent some evidence that the modified duties were merely temporary.

In fact, there was evidence that the modified position was temporary and there was no evidence that it was ever intended to be a permanent position for Brothers. Before his May 1993 surgery, Cargill told Brothers that he would need to take a "full range mobility test" after his surgery in order to return to work. The transcript of Brothers' supervisor's testimony at the referee hearing clearly indicates that the light-duty position was not considered Brothers' regular employment.

> QUESTION: . . . Prior to Tom having his surgery in May of 1993, was the light duty position that he was working in a regular position?

12

WICKUM: No it wasn't.

QUESTION: What position did he take then prior to the surgery? What was he working as?

WICKUM: We modified the job so he could stay on, collect wages, lift, or do anything but lifting. We had other operators out there do all of the lifting, but we modified his job. We were hoping that things would get better, but they just progressively got worse. But it was a modified position and it put a lot of stress and work load on the other employees.

While Cargill had modified Brothers' position to allow him to continue to work even though he could not perform the duties of his regular job, the evidence is clear that the modified position was never converted to a new permanent light-duty position. The referee discussed the reasons why Cargill did not continue with the modified position:

> The employer has chosen not to provide light duty employment to the claimant as he had in the past due to the hardship that it caused on the mill and the other workers, feeling that it was a safety concern as the claimant's co-workers would need to do his heavy lifting for him, leaving the employer vulnerable to other injuries and a decrease in production that they had experienced during the claimant's former period of light duty work.

The referee's decision was adopted by the Board of Labor Appeals. Under the standard of § 39-51-2410(5), MCA, the factual findings of the Board of Labor Appeals, "if supported by evidence and in the absence of fraud, shall be conclusive." This Court discussed this standard in Stine v. Western Federal Savings Bank (1994), 266 Mont. 83, 86, 879 P.2d 53, 55 as follows:

> Under § 39-51-2410(5), MCA, a district court is not permitted to balance conflicting evidence in support of and in opposition to the Board's findings, determine which is the more substantial evidence, or consider where

13

the preponderance of the evidence lies; to do so would substitute the district court's view of the evidence for that of the Board, effectively nullifying the conclusive character of the Board's findings. *Reynolds [v. Pacific Telecom, Inc.* (1993), 259 Mont. 309, 314], 856 P.2d [1365] at 1368.

The District Court correctly applied this standard and affirmed the Board's decision. This Court is held to the same standard as is the district court when reviewing a decision of the Board of Labor Appeals. Zimmer-Jackson v. Dept. of Labor (1988), 231 Mont. 357, 360, 752 P.2d 1095, 1098. The majority's opinion ignores the administrative factual finding and improperly reaches its own factual finding. The majority speculates that since Brothers performed his modified duties for nine months (actually eight months) "it appears that Brothers could have continued performing those same modified duties indefinitely." This factual finding by the majority is in direct conflict with Brothers' supervisor's unchallenged testimony that Brothers was informed prior to his surgery that he would need to take a full range mobility test after his surgery. It is also in conflict with Cargill's concerns, as found by the referee, that the modified position was causing production and safety problems.

The effect of this decision is to place employers, when faced with a similar situation, in a "Catch 22" position. If the employer makes an accommodation for an injured employee and modifies the job requirements for a period of time, the employee can now argue that the modified position has been converted into regular employment. While this decision may well have ramifications beyond the context of unemployment compensation, it

14

inserts into the unemployment system the elements of health insurance and/or workers' compensation coverage. Brothers had not physically recovered from his back injury to the degree he could return to the position of Millman III. Despite the fact that Brothers was physically unable to work at his regular job, the majority has found him eligible for unemployment benefits.

I would affirm the District Court.

_____
Justice


Justice Karla M. Gray joins in the foregoing dissenting opinion.

_____
Justice

Chief Justice J. A. Turnage dissenting:

I join the dissenting opinion of Justice Erdmann.

The result of the majority opinion will effect a disservice to working men and women in Montana who have the misfortune of suffering an on-the-job injury, preventing them, for a limited time, from performing regular employment but allowing performance of lighter employment for a reasonable period.

An employer who has concern for his employees and is willing to create a light-duty job for them, out of concern for the employees' welfare, is now faced with perhaps unintended but nevertheless serious legal consequences because of an effort to voluntarily benefit an employee.

_____
Chief Justice

16