JUSTICE ERDMANN
dissenting.
I respectfully dissent. Under the facts of this case, I cannot agree that the temporary light-duty position created by Cargill was somehow converted into Brothers’ regular employment. The ironic result of this decision is that a company that created a temporary job to accommodate a valued employee is now responsible for unemployment benefits which it would not have been responsible for if the company had not created the temporary job.
Brothers’position as a Millman III involved heavy physical activity and on a usual day he would stack fifteen tons of feed. Beginning in 1989, Brothers started to experience back problems and in 1991 he had back surgery. Following his return to work, he was given a temporary light-duty position for about a month, after which he returned to his regular job. In January 1992 Brothers injured his back again, and at the end of August 1992 his doctor restricted him to light duty. Since Brothers was a valued employee, Cargill again created a temporary job for him which deleted the heavy lifting normally required of a Millman III position. Brothers’ co-workers assumed the lifting duties that Brothers had previously performed. By having co-workers assume Brothers’ lifting duties, job production suffered and Cargill was concerned with safety issues involving the co-workers. During the period of time that Brothers was on light duty, Cargill offered him a permanent office position which only entailed light duty, but Brothers preferred to remain in the mill and refused the position.
Brothers worked under the light-duty restrictions until April 30, 1993, when he left to have a second surgery on his back. On November 4, 1993, Brothers’ doctor released him for work, but with light-duty restrictions. Brothers contacted Cargill and was informed that his Millman III position was available, but that there was no position available if he was restricted to light work.
The Department of Labor referee found that Brothers had not been released to his regular or comparable work, and therefore, was not eligible for benefits under § 39-51-2302(2), MCA. This determination was appealed to the Board of Labor Appeals, and following a hearing on March 4, 1994, the Board upheld and adopted the referee’s deci *113 sion. Brothers appealed to the District Court and the administrative determinations were upheld.
Section 39-51-2302(2), MCA, provides that an employee may not be disqualified from benefits if: the employee leaves work because of a personal injury upon his doctor’s advice and not because of misconduct; the employee recovers from the illness or injury and his recovery is certified by his doctor; the employee returns to his employer and offers to go back to work; and the employee’s regular or comparable suitable work is not available. Here, Brothers complied with the first and third conditions but has failed to meet the second and fourth conditions.
There is no dispute that Brothers’ doctor did not release him to his Millman III position in November 1993. Further, there is no dispute that Brothers’ Millman III position was available at that time and that he could not perform the physical duties of the position. The majority, however, avoids this analysis by determining that the temporary light-duty job that Cargill created for Brothers between September 1992 and April 1993 had become his “regular or comparable suitable work.” The majority holds that Brothers had been released to his permanent light-duty position and that the position was no longer available.
The majority does not try to argue that the light-duty position was comparable to Brothers’ regular position, as it clearly was not. On a normal day in his regular job, Brothers would stack fifteen tons of feed. In his light-duty job he did no lifting at all and, according to his supervisor, was able to do just a fraction of his normal duties. Instead, the majority determined that since Cargill allowed Brothers to work at the light-duty job for nine (actually eight) months, that position was converted into his regular work, absent some evidence that the modified duties were merely temporary.
In fact, there was evidence that the modified position was temporary and there was no evidence that it was ever intended to be a permanent position for Brothers. Before his May 1993 surgery, Car-gill told Brothers that he would need to take a “full range mobility test” after his surgery in order to return to work. The transcript of Brothers’ supervisor’s testimony at the referee hearing clearly indicates that the light-duty position was not considered Brothers’ regular employment.
QUESTION: ... Prior to Tom having his surgery in May of 1993, was the light duty position that he was working in a regular position?
*114 WICKUM: No it wasn’t.
QUESTION: What position did he take then prior to the surgery? What was he working as?
WICKUM: We modified the job so he could stay on, collect wages, lift, or do anything but lifting. We had other operators out there do all of the lifting, but we modified his job. We were hoping that things would get better, but they just progressively got worse. But it was a modified position and it put a lot of stress and work load on the other employees.
While Cargill had modified Brothers’ position to allow him to continue to work even though he could not perform the duties of his regular job, the evidence is clear that the modified position was never converted to a new permanent light-duty position. The referee discussed the reasons why Cargill did not continue with the modified position:
The employer has chosen not to provide light duty employment to the claimant as he had in the past due to the hardship that it caused on the mill and the other workers, feeling that it was a safety concern as the claimant’s co-workers would need to do his heavy lifting for him, leaving the employer vulnerable to other injuries and a decrease in production that they had experienced during the claimant’s former period of light duty work.
The referee’s decision was adopted by the Board of Labor Appeals. Under the standard of § 39-51-2410(5), MCA, the factual findings of the Board of Labor Appeals, “if supported by evidence and in the absence of fraud, shall be conclusive.” This Court discussed this standard in Stine v. Western Federal Savings Bank (1994), 266 Mont. 83, 86, 879 P.2d 53, 55 as follows:
Under § 39-51-2410(5), MCA, a district court is not permitted to balance conflicting evidence in support of and in opposition to the Board’s findings, determine which is the more substantial evidence, or consider where the preponderance of the evidence lies; to do so would substitute the district court’s view of the evidence for that of the Board, effectively nullifying the conclusive character of the Board’s findings. Reynolds [v. Pacific Telecom, Inc. (1993), 259 Mont. 309, 314], 856 P.2d [1365] at 1368.
The District Court correctly applied this standard and affirmed the Board’s decision. This Court is held to the same standard as is the district court when reviewing a decision of the Board of Labor Appeals. Zimmer-Jackson v. Dept. of Labor (1988), 231 Mont. 357, 360, *115 752 P.2d 1095, 1098. The majority’s opinion ignores the administrative factual finding and improperly reaches its own factual finding. The majority speculates that since Brothers performed his modified duties for nine months (actually eight months) “it appears that Brothers could have continued performing those same modified duties indefinitely.” This factual finding by the majority is in direct conflict with Brothers’ supervisor’s unchallenged testimony that Brothers was informed prior to his surgery that he would need to take a full range mobility test after his surgery. It is also in conflict with Cargill’s concerns, as found by the referee, that the modified position was causing production and safety problems.
The effect of this decision is to place employers, when faced with a similar situation, in a “Catch 22” position. If the employer makes an accommodation for an injured employee and modifies the job requirements for a period of time, the employee can now argue that the modified position has been converted into regular employment. While this decision may well have ramifications beyond the context of unemployment compensation, it inserts into the unemployment system the elements of health insurance and/or workers’ compensation coverage. Brothers had not physically recovered from his back injury to the degree he could return to the position of Millman III. Despite the fact that Brothers was physically unable to work at his regular job, the majority has found him eligible for unemployment benefits.
I would affirm the District Court.
JUSTICE GRAY joins in the foregoing dissenting opinion.